Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brenda Harrison and Sandra Pickens, individually and on behalf of all others similarly situated, | Case No. 5:25-cv-01349 |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| Ashley Stewart, Inc., | |
| *Defendant*. | |

# Table of Contents

I.    Introduction..............................................................................................1

II.   Parties. ...................................................................................................4

III.  Jurisdiction and Venue.........................................................................5

IV.   Facts. ......................................................................................................5

    A.   Defendant's fake sales and discounts. ......................................5

    B.   Defendant's advertisements are unfair, deceptive, and unlawful ..................16

    C.   Defendant's advertisements harm consumers...........................17

    D.   Plaintiffs were misled by Defendant's misrepresentations.............................19

    E.   Defendant breached its contract with and warranties to Plaintiffs and
        the putative class. .....................................................................21

    F.   No adequate remedy at law. ......................................................22

V.    Class Action Allegations. ....................................................................23

VI.   Claims. ..................................................................................................24

    First Cause of Action: Violation of California's False Advertising Law Bus. &
        Prof. Code §§ 17500 & 17501 et seq. ......................................24

    Second Cause of Action: Violation of California's Consumer Legal Remedies
        Act (By Plaintiffs and the California Subclass)...................................26

    Third Cause of Action: Violation of California's Unfair Competition Law.............29

    Fourth Cause of Action: Breach of Contract................................................31

    Fifth Cause of Action: Breach of Express Warranty .....................................32

    Sixth Cause of Action: Quasi-Contract/Unjust Enrichment ....................................33

    Seventh Cause of Action: Negligent Misrepresentation................................34

    Eighth Cause of Action: Intentional Misrepresentation.............................35

VII.  Relief...................................................................................................36

# I.    Introduction.

1.    Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    Section 17500 of California's False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.    Moreover, section 17501 of California's False Advertising Law provides, "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.    Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller

is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

7.    As numerous courts have found, fake sales violate these laws.  And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.    Defendant Ashley Stewart, Inc. ("Ashley Stewart" or "Defendant") makes, sells, and markets clothing and accessories (the "Ashley Stewart Products" or "Products"). The Products are sold online through Defendant's website, ashleystewart.com, and in brick-and-mortar stores.

9.    Defendant lists purported regular prices and advertises purported limited-time sales offering steep discounts from those listed regular prices, for example "50% OFF Sitewide."  For example:



*Captured April 1, 2025*




*Captured March 14, 2025*

10.    Defendant also advertises that the sales are limited in time, by using language like "LAST DAY" and "TONIGHT ONLY." For example:



*Captured December 22, 2024*

Class Action Complaint                    3                    Case No. 5:25-cv-01349

11.     Far from being time-limited, however, steep discounts on each of Defendant's Products are nearly always available.  As a result, everything about Defendant's price and purported discount advertising is false.  The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that.  The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.  Nor are the purported discounts limited time—quite the opposite, they are available almost constantly.

12.     As described in greater detail below, Plaintiffs bought Products from Defendant from its website, ashleystewart.com.  When Plaintiffs made their purchases, a purported sale was going on, and Plaintiffs believed that they were being offered steep discounts from the purported regular prices that Defendant advertised.  And based on Defendant's representations, Plaintiffs believed that they were purchasing Products whose regular prices and market values were the purported list prices that Defendant advertised, that they were receiving substantial discounts, and that the opportunity to get those discounts was time-limited.  These reasonable beliefs are what caused Plaintiffs to buy from Defendant what they did.

13.     The representations that Plaintiffs relied on, however, were not true.  The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells the Products.  The purported discounts were not true discounts, and the sales were ongoing—not time-limited.  Had Defendant been truthful, Plaintiffs and other consumers like them would not have purchased the Products, or would have paid less for them.

14.     Plaintiffs bring this case for themselves and other customers who purchased Ashley Stewart Products.

## II.     Parties.

15.     Plaintiff Brenda Harrison is domiciled in Riverside, California.

16.     Plaintiff Sandra Pickens is domiciled in Long Beach, California.

17.     The proposed class includes citizens of every state.

18.     Defendant Ashley Stewart, Inc. is a Delaware corporation with its principal place of business in Secaucus, New Jersey.

## III.    Jurisdiction and Venue.

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

20.     The Court has personal jurisdiction over Defendant because Defendant sold Ashley Stewart Products to consumers in California, including to Plaintiffs.

21.     Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Ashley Stewart Products to consumers in California and this District, including to Plaintiffs.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiffs.

## IV.    Facts.

### A.    Defendant's fake sales and discounts.

22.     Defendant Ashley Stewart manufactures, distributes, markets, and sells clothing and accessories ("Products").  Ashley Stewart sells its Products directly to consumers online, through its website, ashleystewart.com, and in brick-and-mortar stores.

23.     Defendant creates the false impression that its Products' regular prices are higher than they truly are.

24.     Defendant frequently advertises steep discounts on its Products.  These discounts regularly offer "X% off" sitewide, or show strikethrough pricing with "X% off."  Reasonable consumers reasonably interpret Defendant's advertisements to mean that they will be getting a discount off of the prices that Defendant usually charges for its

Products.  But these discounts run constantly, and Defendant advertises them prominently.

25.    Example screenshots of Defendant's sitewide sales are provided on the following pages:






*Captured March 27, 2024*

1
2
3
4
5
6
7
8
9
10
11
12



*Captured June 10, 2024*

13
14
15
16
17
18
19
20
21
22
23
24
25
26



*Captured March 12, 2024*

27
28

Class Action Complaint                7                Case No. 5:25-cv-01349

26.     Defendant frequently advertises a steep sitewide sale, which applies to all products. But even on days where a sitewide sale is not advertised, the internal website pages show that nearly all Products are always on sale.

27.     For example, on March 13, 2025, Defendant's home page did not expressly state that all clothing was on sale. But clicking on the "Clothing" category showed that all of the clothing on the page was on sale nevertheless:[1]



*Captured March 13, 2025*

---

[1] The website page has been cropped here.  The full page shows 26 different items, all of which were on sale.

28.     The same was true on March 17, 2025.  On that day, Defendant's homepage did not expressly advertise a sitewide sale, but the internal Clothing page again confirmed that all clothing on that page was on sale.  For example:



*Captured March 17, 2025*

29.     All of Defendant's Products are discounted nearly all the time.  For example:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Captured July 13, 2024*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






**The Easy Basic Knit Tank Top**
$10.00  $16.50
$10 BASIC TANKS

**Basic Jersey Scoop Neck Tee**
$12.00  $19.50
$12 BASIC TEES

**Sequined Cutout Cover Up**
$17.43  $24.90  $58.00
EXTRA 30% OFF!
Online Exclusive






**Honeycomb Knit Cardigan**
$20.00  $49.50
$20 STYLES
Online Exclusive

**Camo Colorblock Hoodie**
$34.65  $49.50
30% OFF!

**Pull On High Rise Ponte Leggings**
$27.65  $39.50
30% OFF!






**Wood Bead Embellished Maxi Dress**
$29.99  $69.50
$29.99 DRESSES
Online Exclusive

**Annoyed Metallic Graphic Tee**
$17.70  $29.50
40% OFF!

**Cold Shoulder Tie Dyed Maxi Dress**
$29.99  $69.50
$29.99 DRESSES

*Captured July 30, 2024*

Class Action Complaint                    11                    Case No. 5:25-cv-01349

**Pullover Turtleneck Sweater**
$17.25  $34.50
50% OFF

**Crystal Cutout Sweater**
$19.75  $39.50
50% OFF

**The Basic Knit Cami**
$10.00  $16.50
$10 BASIC TANKS
+1 more

**Basic Long Sleeved Tee**
$12.00  $24.50
$12 SELECT BASIC TEES

**French Terry Cutout Hoodie**
$27.25  $54.50
50% OFF

**Faux Sherpa Trimmed Denim Jacket**
$49.75  $99.50
50% OFF
Online Exclusive

**Cable Knit Open Front Duster**
$32.25  $64.50
50% OFF

**French Terry Straight Leg Pants**
$24.75  $49.50
50% OFF

**Twisted Cutout Sweater**
$19.75  $39.50
50% OFF
Online Exclusive

*Captured December 23, 2024*

30.     Reasonable consumers believe that these sales are only available for a limited time, but they continue indefinitely, and are continuously replaced by similar sales.  The list (or strike-through) prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that.  The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

31.     To confirm that Defendant consistently offers discounts off purported regular prices, Plaintiffs' counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org)[2] and screen captures from the ashleystewart.com website.  That investigation confirmed that Defendant's sales have persisted continuously for years.  Plaintiff's counsel reviewed the home pages of Ashley Stewart's website where available, and also the category pages from Ashley Stewart's website (for example, the "Tops," "Clothing," or "New Arrivals" pages).  Each category page typically lists dozens of products, with specific regular prices and sale prices where applicable.

32.     An example of a category page is shown below. The screenshot below is from the first page of the "Tops" category page on February 3, 2025.  On that day, all of the "tops" on the page were listed with a strikethrough regular price and sale price:

---

[2] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/



33.    Category pages from ashleystewart.com were selected from 2023-2025 using the wayback machine and webpage screenshots.  Between January 2023 and May 27, 2025, the available category pages for 62 different days were reviewed.  Of those, 58 (over 93%) showed that all items listed on the selected category page were on sale.   This shows that Defendant's products are on sale nearly all the time.  Thus, the listed regular prices are not the actual regular prices of those products.

34.    Reasonable consumers do not realize the fake nature of the sales.  It is not apparent from merely purchasing the Products, because the sales appear to be bona fide sales.  Consumers do not have any reason to go back to the website day after day to discover that there is still a sale.  And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale.  Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

35.    Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y.  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

36.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were offered for sale before the limited-time offer went into effect).  In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the limited-time sale began, and will again have to pay for Defendant's goods when the sale ends.  Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale,

consumers buying from Defendant had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

37. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant regularly offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are consistently available for less than that, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are regularly available.

**B. Defendant's advertisements are unfair, deceptive, and unlawful**

38. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

39. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

40. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

41.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

42.    And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices.  See Cal. Bus. & Prof. Code § 17200.

43.    Here, as described in detail above, Defendant makes untrue and misleading statements about its prices.  Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement.  In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts.  And Defendant engages in unlawful, unfair, and deceptive business practices.

## C.    Defendant's advertisements harm consumers.

44.    Based on Defendant's advertisements, reasonable consumers expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products and that these are former prices that Defendant sold its Products at before the time-limited discount was introduced.

45.    Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

Class Action Complaint                    17                    Case No. 5:25-cv-01349

46.     In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

47.     Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[3]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

48.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5]

49.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.  In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiffs and the class paid more for the Products they bought than they otherwise would have.

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).
[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

**D.    Plaintiffs were misled by Defendant's misrepresentations.**

50.    On October 26, 2024, Plaintiff Brenda Harrison made a purchase from Ashley Stewart on the website, ashleystewart.com. She made this purchase while residing in Riverside, California. At the time, Defendant advertised a sale. Plaintiff purchased an Easy Basic Knit Tank (Rhododendron), which was listed as having a price of ~~$16.50 to $7.98 to~~ $5.59; an Easy Basic Tank (Mandarin Red), which was priced as ~~$16.50 to $9.99 to~~ $6.99; and a Ribbed Tank Dress (Caramel), which was priced as ~~$49.50 to $16.98 to~~ $11.89.

51.    Ms. Harrison read and relied on Defendant's representations, specifically that the Products had the regular price listed in the first strikethroughs, and were being offered at a discount from those regular prices.  For example, she relied on the representation that the regular price of the Easy Basic Knit Tank was $16.50, and that the price had been reduced to $7.98 and then $5.59.  She relied on the fact that she would be receiving the advertised discount (i.e. a discount of $10.91, or $16.50 minus $5.59). She also believed that the sale was limited in time, and not always available.

52.    On January 3, 2024, Sandra Pickens made a purchase from Ashley Stewart on the website, ashleystewart.com. She made this purchase while residing in Long Beach, California.  At the time, Defendant advertised a sale.  Plaintiff purchased an Ikat Print Embellished Jumpsuit, which was priced as ~~$64.50 to $25.98 to~~ $18.19; a Front Close Wireless Posture Bra, which was priced as ~~$39.50 to~~ $24.99; two pairs of Flawless Fit Power Ponte Leggings, priced as ~~$39.50 to~~ $23.70; Black Iconic Pull On Jeggings, priced as ~~$54.50 to~~ $24.99, and Iconic Medium Wash Pull On Jegging, priced as ~~$54.50 to~~ $24.99.

53.    Ms. Pickens read and relied on Defendant's representations, specifically that the Products had the regular price listed in the first strikethroughs, and were being offered at a discount from those regular prices.  For example, she relied on the representation that the regular price of the Ikat Print Embellished Jumpsuit was $64.50, and that it had been reduced to $18.19.  She relied on the fact that she would be receiving the advertised

discount of $46.31 (i.e. the difference between $64.50 and $18.19). She also believed that the sale was limited in time, and not always available.

54.     Based on Defendant's representations described above, Plaintiffs reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Products they were purchasing at the published regular prices (shown in strikethrough), that these regular prices were the market value of the Products that they were buying, that they were receiving the advertised discounts as compared to the regular prices, that advertised discounts were only available for a limited time (during the limited time promotion), and that the products would go back to retailing for the published regular prices when the promotion ended. They would not have made the purchases if they had known that the Products were not discounted as advertised, and that they were not receiving the advertised discounts.

55.     In reality, as explained above, Defendant's products, including the Products that Plaintiffs purchased, are regularly available at a discount from the purported regular prices. In other words, Defendant did not regularly sell the Products that Plaintiffs purchased at the purported regular price, and the Products were not discounted as advertised. Plus, the sales were not limited time—Defendant's products are regularly on sale.

56.     Plaintiffs face an imminent threat of future harm. They would purchase Products from Defendant again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while they could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiffs are unable to rely on Defendant's advertising in the future, and so they cannot purchase the Products that they would like to purchase.

**E.    Defendant breached its contract with and warranties to Plaintiffs and the putative class.**

57.    When Plaintiffs, and other members of the putative class, purchased and paid for Ashley Stewart Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases.  Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discounted price.

58.    Defendant's advertisements, for example on its website, and email confirmations list the market value of the items that Defendant promised to provide (which, for Plaintiffs, are shown above).  Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiffs and putative class.  For example, Defendant offered to provide Ms. Harrison (among other things), the Easy Basic Knit Tank, with a market value of $16.50, a discount of $10.91, and a discounted price of $5.59.  Similarly, for Ms. Pickens, Defendant offered to provide Ms. Pickens (among other things), the Ikat Print Embellished Jumpsuit, with a market value of $64.50, a discount of $46.31, and a discounted price of $18.19.

59.    Defendant also warranted that the regular price and market value of the Products Plaintiffs purchased were the advertised list prices and warranted that Plaintiffs were receiving a specific discount on the Products.

60.    The regular price and market value of the items Plaintiffs and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

61.    Plaintiffs and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

62.    Defendant breached its contract by failing to provide Plaintiffs and other members of the putative class with Products that have a regular price and market value

equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

**F.    No adequate remedy at law.**

63.    Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

64.    A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims.  For example, Plaintiffs' FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiffs may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of their legal claims.

65.    In addition, to obtain a full refund as damages, Plaintiffs must show that the Product they bought has essentially no market value.  In contrast, Plaintiffs can seek restitution without making this showing.  This is because Plaintiffs purchased Products that they would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

66.    Furthermore, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

67.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiffs face.  Only an injunction can remedy this threat of future harm. Plaintiffs would purchase or consider purchasing Products from Defendant again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiffs have no realistic way to know which—

if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiffs are unable to rely on Defendant's advertising in the future, and so cannot purchase Products they would like to purchase.

**V.    Class Action Allegations.**

68.    Plaintiffs bring the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased one or more Ashley Stewart Products advertised at a discount.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Ashley Stewart Products advertised at a discount.

69.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

70.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

71.    Class members can be identified through Defendant's sales records and public notice.

### *Predominance of Common Questions*

72.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiffs and the proposed class.

*Typicality & Adequacy*

73.    Plaintiffs' claims are typical of the proposed class.  Like the proposed class, Plaintiffs purchased Ashley Stewart Products advertised at a discount.  There are no conflicts of interest between Plaintiffs and the class.

*Superiority*

74.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

<u>**First Cause of Action:**</u>

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.**

**(By Plaintiffs and the California Subclass)**

75.    Plaintiffs incorporate each and every factual allegation set forth above.

76.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

77.    Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

Class Action Complaint                    24                    Case No. 5:25-cv-01349

78.    Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiffs and subclass members.

79.    As alleged more fully above, Defendant advertises former prices along with discounts.  Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$100.00~~) and displaying it next to a lower, discounted price.  Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

80.    The prices advertised by Defendant are not Defendant's regular prices.  Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is consistently a heavily-advertised promotion ongoing entitling consumers to a discount.  Moreover, for the same reasons, those prices were not the former prices of the Products.  Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts are limited in time (such as representations that it's the "last day," expiring soon, or that the sale is only valid "thru" a certain time period) are false and misleading too.

81.    In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising.  As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

82.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements when purchasing Ashley Stewart Products.  Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

83.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Ashley Stewart Products.

84.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass.

85.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

86.    For the claims under California's False Advertising Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

<u>**Second Cause of Action:**</u>

**Violation of California's Consumer Legal Remedies Act (By Plaintiffs and the California Subclass)**

87.    Plaintiffs incorporate each and every factual allegation set forth above.

88.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

89.    Plaintiffs and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

90.     Plaintiffs and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

91.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

92.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

93.     Defendant violated, and continues to violate, section 1770 of the California Civil Code.

94.     Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

95.     Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

96.     And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, (4) misrepresenting the reason for the sale (*e.g.*, "Memorial Weekend Event" when in fact Defendant has ongoing sales).

97.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

98.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Ashley Stewart Products.  Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

99.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Ashley Stewart Products.

100.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass.

101.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

102.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the subclass, seeks injunctive relief.

103.    CLRA § 1782 NOTICE.  On May 21, 2025, CLRA demand letters on behalf of Ms. Harrison and Ms. Pickens were sent to Defendant's New Jersey headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiffs and for each member of the California Subclass within 30 days of receipt, Plaintiffs and the California Subclass will seek all monetary relief allowed under the CLRA.

104.    The CLRA venue declarations are attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (By Plaintiffs and the California Subclass)

105.    Plaintiffs incorporate each and every factual allegation set forth above.

106.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

107.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

108.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

*The Deceptive Prong*

109.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

110.    Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

111.    Plaintiffs relied upon Defendant's misleading representations and omissions, as detailed above.

*The Unfair Prong*

112.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

113.    Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

114.    The harm to Plaintiffs and the subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

115.    Plaintiffs and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiffs.

116.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

*  *  *

117.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Ashley Stewart Products.  Defendant's representations were a substantial factor in Plaintiffs' purchase decision.

118.    In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Ashley Stewart Products.

119.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass members.

120.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

121.    For the claims under California's Unfair Competition Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the

form of a full refund and/or measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(By Plaintiffs and the Nationwide Class)**

122.    Plaintiffs incorporate each and every factual allegation set forth above.

123.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.  In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

124.    Plaintiffs and class members entered into contracts with Ashley Stewart when they placed orders to purchase Products.

125.    The contracts provided that Plaintiffs and class members would pay Ashley Stewart for the Products ordered.

126.    The contracts further required that Ashley Stewart provide Plaintiffs and class members with Products that have a market value equal to the advertised list prices. They also required that Ashley Stewart provide Plaintiffs and the class members with the discount advertised, and listed in the receipt.  These were specific and material terms of the contract.

127.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiffs and class members at the time they placed their orders.

128.    Plaintiffs and class members paid Ashley Stewart for the Products they ordered, and satisfied all other conditions of their contracts.

129.    Ashley Stewart breached the contracts with Plaintiffs and class members by failing to provide Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount.  Ashley Stewart did not provide the discount that Ashley Stewart had promised.

130.    As a direct and proximate result of Defendant's breaches, Plaintiffs and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

131.    For the breach of contract claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

## Fifth Cause of Action:

### Breach of Express Warranty

### (By Plaintiffs and the Nationwide Class)

132.    Plaintiffs incorporate each and every factual allegation set forth above.

133.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.  In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

134.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Ashley Stewart Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the list price.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

135.    This warranty was part of the basis of the bargain and Plaintiffs and members of the class relied on this warranty.

136.    In fact, Ashley Stewart Products' stated market value were not the prevailing market value.  Thus, the warranty was breached.

137.    Plaintiffs provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's registered agent and New Jersey headquarters on May 21, 2025.

138.    Plaintiffs and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false,

(b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

139.    For their breach of express warranty claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiffs and the Nationwide Class)**

140.    Plaintiffs incorporate paragraphs 1-56 and 63-74 above.

141.    Plaintiffs bring this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of themselves and the Nationwide Class.  In the alternative, Plaintiffs bring this claim on behalf of themselves and the California Subclass.

142.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiffs and the class to purchase Ashley Stewart Products and to pay a price premium for these Products.

143.    In this way, Defendant received a direct and unjust benefit, at Plaintiffs expense.

144.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiffs and other class members are void or voidable.

145.    Plaintiffs and the class seek restitution, and in the alternative, rescission.

146.    For the quasi-contract/unjust enrichment claims, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiffs and the California Subclass)**

147.    Plaintiffs incorporate each and every factual allegation set forth above.

148.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

149.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and California Subclass members concerning the existence and/or nature of the discounts and savings advertised.

150.    These representations were false.

151.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

152.    Defendant intended that Plaintiffs and California Subclass members rely on these representations and Plaintiffs and subclass members read and reasonably relied on them.

153.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Ashley Stewart Products.

154.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and California Subclass members.

155.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

156.    For the negligent misrepresentation claims, Plaintiffs seek all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

### Eighth Cause of Action:

### Intentional Misrepresentation

### (By Plaintiffs and the California Subclass)

157.    Plaintiffs incorporate each and every factual allegation set forth above.

158.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

159.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and California Subclass members concerning the existence and/or nature of the discounts and savings advertised.

160.    These representations were false.

161.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

162.    Defendant intended that Plaintiffs and California Subclass members rely on these representations and Plaintiffs and California Subclass members read and reasonably relied on them.

163.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Ashley Stewart Products.

164.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and California Subclass members.

165.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did

not receive the discounts they were promised, and received Products with market values lower than the promised market values.

166.    For the intentional misrepresentation claims, Plaintiffs seek all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

**VII.    Relief.**

167.    Plaintiffs seek the following relief for themselves and the class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed class and subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**Demand For Jury Trial**

168.    Plaintiffs demand the right to a jury trial on all claims so triable.

Dated: June 2, 2025                                Respectfully submitted,

                                                   By: /s/ *Christin Cho*
                                                   Christin Cho (Cal. Bar No. 238173)
                                                   christin@dovel.com
                                                   Simon Franzini (Cal. Bar No. 287631)
                                                   simon@dovel.com
                                                   DOVEL & LUNER, LLP
                                                   201 Santa Monica Blvd., Suite 600

Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*